## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>HEYWOOD HEALTHCARE, INC., *et al.*,[1]<br><br>        Debtors-in-Possession. | Chapter 11<br>Case No. 23-40817-EDK<br><br>(Jointly Administered) |
| OFFICIAL COMMITTEE OF<br>UNSECURED CREDITORS OF<br>HEYWOOD HEALTHCARE, INC., *et al.*,<br><br>        Plaintiff,<br>v.<br><br>U.S. BANK TRUST COMPANY,<br>NATIONAL ASSOCIATION, as successor<br>in interest to U.S. BANK, NATIONAL<br>ASSOCIATION, as master trustee,<br>SIEMENS FINANCIAL SERVICES, INC.,<br>and SIEMENS PUBLIC, INC.,<br><br>        Defendants. | Adv. Pro. No. 24-_____-EDK |

## <u>COMPLAINT</u>

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of the above-captioned

Debtors (the "<u>Committee</u>"), for and on behalf of the Debtors' estates, hereby complains against

U.S. Bank Trust Company, National Association, as successor in interest to U.S. Bank National

Association in its capacity as master trustee (the "<u>Master Trustee</u>"), Siemens Financial Services,

---

[1] The debtors-in-possession in these chapter 11 cases (the "<u>Chapter 11 Cases</u>"), along with the last four digits of each federal tax identification number, are: Heywood Healthcare, Inc. (0658) ("<u>Heywood Healthcare</u>"); The Henry Heywood Memorial Hospital (3581) ("<u>Heywood Hospital</u>"); Athol Memorial Hospital (6583) ("<u>Athol Hospital</u>"); Heywood Medical Group, Inc. (3589) ("<u>Heywood Medical</u>"); Athol Memorial Hospital NMTC Holdings, Inc. (2189) ("<u>Athol NMTC</u>"); Quabbin Healthcare, Inc. (7153) ("<u>Quabbin</u>"); and Heywood Realty Corporation (7447) ("<u>Heywood Realty</u>," and together with Heywood Healthcare, Heywood Hospital, Athol, Heywood Medical, Athol NMTC, and Quabbin, the "<u>Debtors</u>").

Inc. ("SFS"), and Siemens Public, Inc. (the "Bondholder," and together with SFS and the Master Trustee, the "Defendants"), as follows:

## NATURE OF THE ACTION

1.     This adversary proceeding is a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) and (K).  If any part of this adversary proceeding is found to be "non-core," then the Committee consents to the entry of final orders and judgments by this Court pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Rules").

2.     This is an adversary proceeding brought under, *inter alia*, Rule 7001, sections 105, 502, 506, 544, 547, and 552 of title 11 of the United States Code (the "Bankruptcy Code"), and 28 U.S.C. § 2201.

3.     The Committee has standing to prosecute this action under section 6.1 of the *Sixth Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* entered by this Court on May 1, 2024 [Dkt. No. 717] (the "Sixth Interim Order"), which provides in relevant part that: "This Sixth Interim Order vests and confers solely on the Committee standing and authority to pursue any cause of action belonging to the Debtors or their Estates related to the subject matter set forth in this Section 6.1."[2]

4.     This Challenge Proceeding was timely commenced prior to the expiration of the Initial Committee Challenge Deadline and the Second Committee Challenge Deadline under section 6.1 of the Sixth Interim Order.

---

[2] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sixth Interim Order.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(a).

6.      Venue in this District is proper under 28 U.S.C. § 1409.

## PARTIES

7.      On October 20, 2023, the United States Trustee appointed the Committee [Dkt. No. 127].  The Committee brings this proceeding on behalf of and for the benefit of the Debtors' estates.

8.      The Master Trustee is a party to the *Master Indenture Among Heywood Healthcare, Inc., The Henry Heywood Memorial Hospital, Athol Memorial Hospital, Heywood Medical Group, Inc., Quabbin Healthcare, Inc., and U.S. Bank National Association as Master Trustee, dated as of November 1, 2019* (as amended, restated, supplemented, or otherwise modified from time to time, the "Master Indenture").  Upon information and belief, the Master Trustee conducts operations in the United States.

9.      SFS, a corporation organized and existing under the laws of the State of Delaware, is the lender under that certain Prepetition Term Loan Facility (defined below).  Upon information and belief, SFS conducts operations in the United States.

10.     The Bondholder, a corporation organized and existing under the laws of the State of Delaware, is the sole and registered beneficial owner of the Series 2019 Bonds (defined below).  Upon information and belief, the Bondholder conducts operations in the United States.

## FACTUAL BACKGROUND

### A.     The Chapter 11 Cases

11.     On October 1, 2023 (the "Petition Date"), the Debtors filed voluntary petitions for relief commencing the Chapter 11 Cases under chapter 11 of the Bankruptcy Code.

12.     The Debtors own and operate healthcare facilities in Massachusetts.

13.     The Debtors continue to manage and operate their businesses and properties as debtors-in-possession under sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

14.     On October 2, 2023, the Debtors filed the *Emergency Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection to Prepetition Secured Parties, (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, (V) Scheduling a Final Hearing and (VI) Granting Related Relief* [Dkt. No. 14] (the "Cash Collateral Motion").

15.     On October 5, 2023 [Dkt. No. 67], November 8, 2023 [Dkt. No. 229], January 26, 2024 [Dkt. No. 501], February 23, 2024 [Dkt. No. 576], April 2, 2024 [Dkt. No. 655], and May 1, 2024 [Dkt. No. 717], the Court entered interim orders related to the Cash Collateral Motion.

16.     Section 6.1 of the Sixth Interim Order provides, in relevant part, as follows:

> The stipulations, releases, agreements, and admissions contained in this Sixth Interim Order, including, without limitation, the Debtors' Stipulations shall be binding on the Debtors in all circumstances. The Debtors' Stipulations shall be binding on the estate and each other party in interest, unless, and solely to the extent that each such party in interest takes the following actions (each, a "Challenge Proceeding" and, collectively, the "Challenge Proceedings") by no later than the following applicable deadlines (such time period established by the following clauses (a) through (d), as applicable, each a "Challenge Period" and, collectively, the "Challenge Periods"): (a) for a chapter 7 trustee and any other party in interest (other than the Committee) with standing and requisite authority to timely commence an adversary proceeding or other appropriate contested

matter concerning the Prepetition Secured Parties' validity, extent and perfection of liens (the "Lien Challenge Complaint Issues"), such party in interest files a complaint with respect to the Lien Challenge Complaint Issues (such complaint, the "Lien Challenge Complaint") by no later than **February 15, 2024**, (b) with respect to the Committee, which is hereby granted standing derivatively on behalf of and with all rights of the estate regarding the Lien Challenge Complaint Issues and Non Lien Challenge [Matters] pursuant to this Order, the Committee files a Lien Challenge Complaint by no later than **February 15, 2024** (the "Initial Committee Challenge Deadline"), (c) with respect to the Committee, the Committee files a complaint or motion that seeks to assert, preserve, or prosecute any relief pursuant to sections 506(c) and 552(b) of the Bankruptcy Code, or any action for preferences, fraudulent transfers or conveyances, other avoidance power claims, or any other claims, counterclaims, or causes of action, objections, contests, or defenses (other than the Lien Challenge Complaint Issues) or the recharacterization of any Adequate Protection Payment or interest payment made pursuant to a cash collateral order (whether interim or final) (collectively, the "Non-Lien Challenge Matters" and such action referred to as the "Non-Lien Challenge"), by **April 22, 2024** (the "Second Committee Challenge Deadline"), or (d) such later date as set by agreement of the Committee, Debtors and Prepetition Secured Parties memorialized in a stipulation filed on the docket or an order of the Court for cause shown prior to the expiry of the applicable time period established by clauses (a) through (c); provided that any pleadings filed in connection with any Challenge Proceeding shall set forth with specificity the basis, to the extent required under the applicable pleading standard, for such Challenge Proceeding, and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred unless the Court for cause shown grants the opportunity to amend; provided, further that nothing herein limits or restricts the Committee from filing a Lien Challenge Complaint that expands or modifies the terms, scope and relief sought in the Draft Lien Challenge Complaint (as defined below). The Challenge Period shall be extended for a chapter 7 trustee for an additional seventy-five (75) calendar days if these Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, provided, further, that in the event a chapter 7 trustee is appointed after the consummation of a sale of all or substantially all of the Debtors' assets under section 363 of the Bankruptcy Code or after the confirmation of a chapter 11 plan, the applicable Challenge Period shall not be extended and the original Challenge Period shall be binding on the chapter 7 trustee. A party in interest's commencement of a timely Challenge Proceeding shall preserve the applicable Challenge Period only with respect to such party in interest commencing such Challenge Proceeding or its successors and assigns and only to the extent of the express content of such Challenge Proceeding, and provided, further, that, if the Committee provides to the Debtors, the Prepetition Secured Parties, and the U.S. Trustee a draft of the

Lien Challenge Complaint (the "Draft Lien Challenge Complaint") prior to the expiration of the Initial Committee Challenge Deadline or a draft complaint with respect to the Non-Lien Challenge (the "Draft Non-Lien Challenge Complaint") prior to the Second Committee Challenge Deadline, as applicable, then such applicable Challenge Period shall be tolled until the earliest of (i) the day on which the adversary proceeding or other appropriate contested matter commenced by such applicable complaint is resolved by a final order of the Court or a court of competent jurisdiction, (ii) the entry of an order approving the sale of all or substantially all of the Debtors' assets, (iii) the entry of an order approving a disclosure statement, (iv) the entry of an order converting or dismissing these Chapter 11 Cases, or (v) the entry of a final decree closing these Chapter 11 Cases. Following receipt of a Draft Lien Challenge Complaint or a Draft Non-Lien Challenge Complaint, the Debtors shall promptly file with the Court a notice of receipt of such complaint and tolling of the applicable Challenge Period.

**B.** **Prepetition Bond Facility and Prepetition Term Loan Facility**

17.    In 2019, prior to the Petition Date, Heywood Healthcare, Heywood Hospital, Athol Hospital, Heywood Medical, and Quabbin (the "Obligated Bond Group") obtained financing through a bond issuance and related loan facilities (the "Prepetition Bond Facility"). The Master Trustee serves as the master trustee related to the Prepetition Bond Facility under the Master Indenture.

18.    Under three loan and trust agreements each dated as of November 1, 2019, the Massachusetts Development Finance Agency, a body corporate and politic and public instrumentality of the Commonwealth of Massachusetts created by and existing under the Massachusetts General Laws, chapter 23G, issued certain tax-exempt bonds in the aggregate principal amount of approximately $49.9 million (the "Series 2019 Bonds"), consisting of: (a) the Series 2019A Bonds in the aggregate principal amount of $28,350,000 (the "Series 2019A Bonds"), (b) the Series 2019B-1 Bonds in the aggregate principal amount of $10,525,000 (the "Series 2019B-1 Bonds"), and (c) the Series 2019B-2 Bonds in the aggregate principal amount of $11,005,000 (the "Series 2019B-2 Bonds"). As of the Petition Date, there was approximately

6

Case 24-04022   Doc 1   Filed 05/29/24   Entered 05/29/24 13:11:11   Desc Main
Document      Page 7 of 21

$26,040,000 outstanding under the Series 2019A Bonds, approximately $9,665,000 outstanding under the Series 2019B-1 Bonds, and approximately $10,105,000 outstanding under the Series 2019B-2 Bonds.

19.     In connection with each of the Series 2019 Bonds, the Obligated Bond Group entered into a corresponding continuing covenant agreement, each dated as of November 1, 2019, with the Bondholder, under which the Bondholder purchased the applicable Series 2019 Bond and became the sole registered and beneficial owner of such bond.

20.     Under section 2.07 of the Master Indenture, each member of the Obligated Bond Group granted and pledged to the Master Trustee a lien on, and security interest in, its "Gross Receipts" to secure all indebtedness under the Master Indenture.  The Master Indenture defines Gross Receipts to include, among other things, deposit accounts.

21.     Separate from their bond debt obligations, Heywood Healthcare, Athol Hospital, Heywood Hospital, Quabbin, and Heywood Medical (the "Obligated Term Loan Group," and together with the Obligated Bond Group, the "Obligated Group," and each an "Obligated Group Member") are also parties to that certain *Loan Agreement dated as of April 12, 2022* with SFS (SFS, together with the Bondholder, the "Prepetition Lenders"), under which SFS provided the Obligated Group with a term loan in the aggregate principal amount of $10,000,000 (the "Prepetition Term Loan Facility"). Quabbin was released from the Obligated Term Loan Group in 2022.  As of the Petition Date, there was approximately $8,200,000 outstanding under the Prepetition Term Loan Facility.

22.     The Prepetition Term Loan Facility is also secured by Gross Receipts and all other property pledged to the Master Trustee under the Master Indenture (collectively, the "Collateral").

### C.    **The Deposit Accounts**

23.    Article 9 of the Uniform Commercial Code, M.G.L. ch. 106, § 9-101 *et seq.*

("Article 9"), defines "deposit account" to mean a demand, time, savings, passbook, or similar

account maintained with a bank.

24.    According to the Debtors' schedules filed in the Chapter 11 Cases, the Debtors own

and maintain 18 deposit accounts, as set forth on **Exhibit A** (collectively, the "Deposit Accounts").

Each of the Deposit Accounts constitutes a "deposit account" under Article 9.

25.    Based on the representations made in the Debtors' cash management motion [Dkt.

No. 5] and supporting declarations, the Debtors' accounts (as defined by Article 9), grants, rebates,

and other miscellaneous deposits flow into or through the Deposit Accounts.

### D.    **State Funding**

26.    Upon information and belief, the Commonwealth of Massachusetts provided

millions of dollars in grant money to one or more Debtors prior to the Petition Date. It is not yet

clear the extent to which such funds comprised any portion of the balance in the Deposit Accounts

on the Petition Date.

27.    Additionally, following the Petition Date, the Commonwealth of Massachusetts

agreed to provide Heywood Hospital with up to $13.25 million of State Funding under the SPS

Agreement.  The Sixth Interim Order makes clear that the State Funding is not "Cash Collateral"

or "Prepetition Collateral," and provides that: "This Sixth Interim Order makes no determination

with respect to whether cash receipts generated from the State Funding constitute Prepetition

Collateral or otherwise and the rights therein.  Further proceedings may be required for such

determination, and all rights as to such determination are reserved as to all parties."

## COUNT I
### (Avoidance of Unperfected Lien – Deposit Accounts)
### (11 U.S.C. § 544(a))

28.     The ComCmittee realleges and restates all the foregoing paragraphs as if fully set forth herein.

29.     Under sections 9-312(b) and 9-314 of Article 9, a security interest in a deposit account may only be perfected by control.

30.     Under section 9-104(a) of Article 9, a secured party has control over a deposit account if: (a) the secured party is the bank with which the deposit account is maintained; (b) the debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the account without further consent by the debtor; or (c) the secured party becomes the bank's customer with respect to the deposit account.

31.     On information and belief, the Defendants do not hold any deposit account control agreements related to any of the Deposit Accounts.

32.     On information and belief, the Defendants do not have control over any of the Deposit Accounts under any other method of control set forth in section 9-104(a) of Article 9.

33.     The Defendants do not have a perfected security interest in the Deposit Accounts under Article 9.

34.     Under section 9-317(a) of Article 9, "a security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before the earlier of the time . . . the security interest is perfected . . . ."

35.     Under Bankruptcy Code section 544(a), "The trustee shall have, as of the commencement of the case . . . the rights and powers of, or may avoid any transfer of property of

9

the debtor . . . that is voidable by – (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists; [or] (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists . . . ."

36.     Under section 6.1 of the Sixth Interim Order, the Committee is exercising the power of a trustee under Bankruptcy Code section 544(a) on behalf of the Debtors' estates.

WHEREFORE, the Committee respectfully requests that the Court enter judgment in its favor, and against each of the Defendants:

A.     Avoiding the Defendants' unperfected security interests in the Deposit Accounts under Bankruptcy Code section 544(a);

B.     Preserving, for the benefit of the Debtors' estates, the security interests so avoided under Bankruptcy Code section 551;

C.     Awarding the Committee's reasonable attorneys' fees and costs; and

D.     Granting such other and further relief as the Court deems just and appropriate under the circumstances.

## COUNT II
### (Declaratory Judgment - Deposit Accounts)
### (28 U.S.C. § 2201(a))

37.     The Committee realleges and restates all the foregoing paragraphs as if fully set forth herein.

38.     An actual controversy exists between the Committee and the Defendants regarding whether the Defendants hold first priority, perfected security interests in the Deposit Accounts.

39.     A determination by the Court under Rules 7001(2) and 7001(9), Bankruptcy Code sections 105, 502, 28 U.S.C. § 2201, and other applicable law regarding the validity, priority, and extent of the Defendants' security interests in the Deposit Accounts is necessary to the proper administration of the Debtors' estates.

WHEREFORE, the Committee respectfully requests that the Court enter declaratory judgment in its favor, and against each of the Defendants, declaring that:

A.      The Defendants do not hold perfected security interests in the Deposit Accounts;

B.      The Defendants' unperfected security interests are avoided under Bankruptcy Code section 544(a);

C.      The security interests so avoided are preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551; and

D.      The Committee is entitled to such other and further relief as the Court deems just and appropriate under the circumstances.

### COUNT III
**(Avoidance and Recovery of Preferential Transfers)**
**(11 U.S.C. §§ 547, 550)**

40.     The Committee realleges and restates all the foregoing paragraphs as if fully set forth herein.

41.     During the 90-day period prior to the Petition Date, the Debtors made certain transfers of interests of the Debtors in property to or for the benefit of the Defendants (collectively, the "Transfers"), including: (a) the Transfers set forth on **Exhibit B** attached hereto and incorporated herein by reference; and (b) Transfers that created a perfected security interest in

11

inventory or receivables, or the proceeds of either, the aggregate of which caused a reduction, as of the Petition Date and to the prejudice of other creditors holding unsecured claims, of the Defendants' deficiency claim compared to the date that was 90 days before the Petition Date.

42.    At the time of each of the Transfers, the Defendants were creditors of the Debtors.

43.    The Transfers were made for or on account of antecedent debts owed by the Debtors to the Defendants.

44.    The Debtors were insolvent at the time of each of the Transfers because the amount of the Debtors' debts, including their indebtedness to Defendants, exceeded the value of all the Debtors' property at a fair valuation.

45.    The Transfers enabled the Defendants to receive more than they would have received in a chapter 7 case if the Transfers had not been made because, (a) upon information and belief, including certain expressions of interest related to the sale of substantially all of the Debtors' assets, the value of the Defendants' claims exceed the value of the Collateral, and (b) the Debtors' unsecured, non-priority creditors will not receive payment in full on their claims in these chapter 11 cases.

46.    The Defendants were the initial transferees of the Transfers.

WHEREFORE, the Committee respectfully requests that the Court enter judgment in its favor, and against each of the Defendants:

A.    Avoiding the Transfers pursuant to Bankruptcy Code section 547;

B.    Recovering the value of the Transfers from the Defendants pursuant to Bankruptcy Code section 550, along with the Committee's attorneys' fees and costs, and pre and post judgment interest, to the fullest extent permitted by applicable law; and

C.      Granting the Committee such other and further relief as the Court deems just and appropriate under the circumstances.

**COUNT IV**
**(Declaratory Judgment – Adequate Protection**
**Payments and Adequate Protection Professional Fees and Expenses)**
**(28 U.S.C. § 2201(a))**

47.     The Committee realleges and restates all the foregoing paragraphs as if fully set forth herein.

48.     An actual controversy exists between the Committee and the Defendants regarding the secured status of Defendants' claims and recharacterization of Adequate Protection Payments and Adequate Protection Professional Fees and Expenses.

49.     Bankruptcy Code section 506(b) provides: "**To the extent** that an allowed secured claim is secured by property the value of which, after recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose."  11 U.S.C. § 506(b) (emphasis added).

50.     Under the Sixth Interim Order, the Debtors have made and are making certain Adequate Protection Payments to the Defendants, and have paid and are paying certain Adequate Protection Professional Fees and Expenses to Adequate Protection Professionals.

51.     However, "to the extent the Prepetition Secured Parties are determined to be undersecured by a final order of a court of competent jurisdiction, then any payments pursuant to this paragraph shall be subject to any remedy (which may include reallocation as principal payments and/or clawback) in accordance with applicable law as set forth in such final order." Sixth Interim Order § 2.1(e).

13

52.     Upon information and belief, including certain expressions of interest related to the sale of substantially all of the Debtors' assets, the Defendants are "undersecured" for purposes of the Sixth Interim Order and Bankruptcy Code section 506(b) because the value of the Collateral is not greater than the Defendants' claims.

53.     A determination by the Court under Rules 7001(2) and 7001(9), Bankruptcy Code section 506(b), section 2.1(e) of the Sixth Interim Order, and 28 U.S.C. § 2201, regarding the secured status of Defendants' claims and recharacterization of Adequate Protection Payments and Adequate Protection Professional Fees and Expenses is necessary to the proper administration of the Debtors' estates.

WHEREFORE, the Committee respectfully requests that the Court enter declaratory judgment in its favor, and against each of the Defendants, declaring that:

A.     Defendants are "undersecured" and thus not entitled to postpetition interest, fees, costs, or other charges under Bankruptcy Code section 506(b);

B.     The value of all Adequate Protection Payments and Adequate Protection Professional Fees and Expenses shall be avoided and recovered for the benefit of the estates;

C.     Alternatively, all the Adequate Protection Payments and Adequate Protection Professional Fees and Expenses shall be recharacterized as principal payments; and

D.     The Committee is entitled to such other and further relief as the Court deems just and appropriate under the circumstances.

## COUNT V
### (Surcharge of Collateral)
### (11 U.S.C. § 506(c))

54.     The Committee realleges and restates all the foregoing paragraphs as if fully set forth herein.

55.     Bankruptcy Code section 506(c) provides: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property."

56.     The Debtors and their estates have incurred reasonable, necessary costs and expenses to preserve or dispose of the Collateral, as set forth in the Approved Budget.

57.     The Defendants have benefited from the costs and expenses so incurred because, among other things, such costs and expenses preserved the going concern value of the Collateral.

WHEREFORE, the Committee respectfully requests that the Court enter judgment in its favor, and against each of the Defendants:

A.     Recovering from the Collateral the reasonable, necessary costs and expenses to preserve or dispose of the Collateral under Bankruptcy Code section 506(c); and

B.     Granting the Committee such other and further relief as the Court deems just and appropriate under the circumstances.

### COUNT VI
### (Declaratory Judgment – After Acquired Property)
### (28 U.S.C. § 2201(a))

58.     The Committee realleges and restates all the foregoing paragraphs as if fully set forth herein.

59.     An actual controversy exists between the Committee and the Defendants regarding the extent of the Defendants' liens on property acquired by the estates or the Debtors after the Petition Date (the "After Acquired Property").

60.     Bankruptcy Code section 552(a) provides that: "Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the

15

case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case."

61.     Bankruptcy Code section 552(b)(1) provides: "**[I]f** the debtor and an entity entered into a security agreement before the commencement of the case **and if** the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, **then** such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case **to the extent** provided by such security agreement and by applicable nonbankruptcy law, **except** to the extent that the court, after notice and a hearing and based on the equities of the case orders otherwise."  11 U.S.C. § 552(b)(1) (emphasis added).

62.     As set forth above, on the Petition Date, certain property of the estate was not Collateral or identifiable proceeds of Collateral, and thus certain After Acquired Property is not proceeds, product, offspring, or profits of Collateral.

63.     As set forth above, the Debtors received certain State Funds before and after the Petition Date, and certain After Acquired Property is proceeds, products, offspring, or profits of the State Funds, not the Collateral.

64.     A determination by the Court under Rules 7001(2) and 7001(9), Bankruptcy Code section 552, 28 U.S.C. § 2201, and other applicable law regarding the extent of the Defendants' liens on After Acquired Property is necessary to the proper administration of the Debtors' estates.

WHEREFORE, the Committee respectfully requests that the Court enter declaratory judgment in its favor, and against each of the Defendants, declaring that:

A.      The Defendants' liens do not attach to certain After Acquired Property under Bankruptcy Code section 552(a);

16

B.      Certain After Acquired Property is not proceeds, products, offspring, of profits of the Collateral;

C.      For the reasons set forth above, even if the After Acquired Property constitutes proceeds, products, offspring, or profits of the Collateral, the Defendants' lien on After Acquired Property should be limited under the "equities of the case" exception; and

D.      The Committee is entitled to such other and further relief as the Court deems just and appropriate under the circumstances.

## COUNT VII
### (Objection to Prepetition Obligations)
### (11 U.S.C. §§ 502, 506)

65.      The Committee realleges and restates all the foregoing paragraphs as if fully set forth herein.

66.      Proof of a claim is deemed allowed unless a party in interest objects.  11 U.S.C. § 502(a).

67.      If a claim objection is filed, the Court, after notice and a hearing, shall determine the allowed amount of such claim, if any.  11 U.S.C. § 502(b).

68.      A claim is an allowed secured claim to the extent of the value of the creditor's interest in property of the estate, and is an unsecured claim to the extent that the value of the creditor's interest in property of the estate is less than the amount of such allowed claim.  11 U.S.C. § 506(a).

69.      The Prepetition Obligations constitute claims under Bankruptcy Code sections 502 and 506.  Sixth Interim Order § I(E)(iv).

70.     For the reasons set forth above, the Committee hereby objects to both the allowed amount and secured status of the Prepetition Obligations under Bankruptcy Code sections 502 (including section 502(d)) and 506.

WHEREFORE, the Committee respectfully requests that the Court enter judgment in its favor, and against each of the Defendants:

A.      Determining the allowed amount of the Prepetition Obligations and disallowing such claims in whole or in part under Bankruptcy Code section 502 (including section 502(d));

B.      Determining the secured status of the Prepetition Obligations and determining that such claims are not secured in whole or in part under Bankruptcy Code section 506; and

C.      Granting the Committee such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: May 29, 2024                          Respectfully submitted,

                                             */s/ Jeremy R. Fischer*
                                             Jeremy R. Fischer (BBO#569358)
                                             Kellie W. Fisher (BBO#693590)
                                             **DRUMMOND WOODSUM**
                                             84 Marginal Way, Suite 600
                                             Portland, ME 04101
                                             (207) 772-1941
                                             jfischer@dwmlaw.com
                                             kfisher@dwmlaw.com

                                             -and-

                                             Jay S. Geller
                                             **LAW OFFICE OF JAY S. GELLER**
                                             Lunt Professional Building
                                             74 Lunt Road, Suite 206
                                             Falmouth, ME 04105
                                             (207) 899-1477
                                             jgeller@jaysgellerlaw.com

                                             *Special Counsel to the Official Committee of*
                                             *Unsecured Creditors of Heywood*
                                             *Healthcare, Inc., et al.*

## EXHIBIT A
### (Deposit Accounts)

| Debtor | Account Type | Depository | Account Number Ending |
|---|---|---|---|
| Athol Hospital | Operating | TD Bank | 6541 |
| Athol Hospital | Payroll | TD Bank | 6533 |
| Athol Hospital | Temp. Restricted | TD Bank | 6872 |
| Athol NMTC | Operating | TD Bank | 6484 |
| Heywood Healthcare | Operating | TD Bank | 9664 |
| Heywood Medical | Operating | TD Bank | 9534 |
| Heywood Medical | Payroll | TD Bank | 4407 |
| Heywood Realty | Operating | TD Bank | 4648 |
| Quabbin | Operating | TD Bank | 660 |
| Quabbin | Temp. Restricted | TD Bank | 678 |
| Quabbin | Operating | GFA FCU | 2802 |
| Quabbin | Temp. Restricted | GFA FCU | 6870 |
| Heywood Hospital | Operating | TD Bank | 9597 |
| Heywood Hospital | Payroll | TD Bank | 4390 |
| Heywood Hospital | Campaign | TD Bank | 5148 |
| Heywood Hospital | Section 125 Plan | TD Bank | 8844 |
| Heywood Hospital | EFT | TD Bank | 4175 |
| Heywood Hospital | Processing | U.S. Bank | 1540 |

**EXHIBIT B**
**(Transfers)**

| Transferor | Transferee | Date | Amount |
|---|---|---|---|
| Henry Heywood Memorial Hospital | Siemens Financial Services, Inc. | 7/3/2023 | $198,468.51 |
| Henry Heywood Memorial Hospital | Siemens Financial Services, Inc. | 7/26/2023 | $127,318.10 |
| Henry Heywood Memorial Hospital | Siemens Financial Services, Inc. | 8/11/2023 | $8,883.54 |
| Henry Heywood Memorial Hospital | Siemens Financial Services, Inc. | 8/28/2023 | $22,465.28 |
| Henry Heywood Memorial Hospital | Siemens Financial Services, Inc. | 9/29/2023 | $128,717.20 |
| Henry Heywood Memorial Hospital | U.S. Bank | 9/29/2023 | $50,000.00 |